Phillip E. Smith appeals from a judgment of the Champaign County Court of Common Pleas, which granted Valerie K. Smith's complaint for divorce.
The procedural history of the case is as follows. The relevant facts will be discussed under the assignments of error.
Mr. and Mrs. Smith were married in 1970, and three children were born of their marriage. Mrs. Smith filed a complaint for divorce in February 1996. At that time, only one of the three children was a minor.
The parties resolved numerous issues related to custody and property division by agreement. Although the parties agreed that spousal support was necessary, they were unable to agree upon the appropriate amount and duration of the spousal support. As a result, this matter was referred to a magistrate for a hearing. The magistrate ordered Mr. Smith to pay spousal support in the amount of $475 per week for an indefinite period of time and retained jurisdiction to modify spousal support in the future. The magistrate's recommendation was approved by the trial court over Mr. Smith's objection.
Mr. Smith raises two assignments of error on appeal.
 I. THE COURT ABUSED ITS DISCRETION IN AWARDING THE AMOUNT OF SUSTENANCE ALIMONY AS THE NEEDS OF THE PLAINTIFF/APPELLEE WERE NOT CONSIDERED VERSUS HER ABILITY TO EARN A LIVING AND THE PURPOSE OF SUSTENANCE ALIMONY WHICH IS TO PROVIDE A BRIDGE OF INCOME UNTIL THE PLAINTIFF/APPELLEE COULD BECOME SELF SUPPORTING.
Mr. Smith contends that trial court abused its discretion in awarding spousal support of over $2,000 per month because this amount was not consistent with Mrs. Smith's demonstrated need. Mr. Smith claims that this "exorbitant" award places an undue hardship on him because it puts Mrs. Smith "in a better position financially" than he and rewards her for not working.
At the hearing, Mrs. Smith testified that she had dealt with emotional problems most of her life and that these problems had intensified since the family had moved from Indiana to Ohio a few years earlier. She attributed this intensification to the loss of the emotional support system she had had in Indiana and to recent recollections of having been sexually abused as a child. She also testified that some of her emotional problems were connected with having been raped several times as a teenager. She testified that she had been seeing doctors, psychologists, and psychiatrists since moving to Ohio and that she took numerous prescription medications. She stated that she worked a part-time schedule of only thirty hours per week to accommodate her needs for medical attention, and that even with a reduced schedule, she was only able to maintain her employment due to the understanding and flexibility of her employer. Mrs. Smith also offered into evidence a detailed list of her monthly expenses, including medical expenses, totaling over $3,700.
Mrs. Smith's doctor also testified on her behalf. He testified that Mrs. Smith suffered from clinical depression caused by a number of overlapping and interrelated issues, including unresolved issues from her childhood. He testified that she was on medication for depression, anxiety, and sleeplessness, and that she "would not function at all" without antidepressant medication. The doctor also stated that, in his medical opinion, Mrs. Smith would need some medical support for the next several years, that she was not functioning "at her peak capacity," and that she may have trouble maintaining her employment due to the symptoms of her illness, such as memory and concentration problems, moodiness, and absenteeism.
Mr. Smith testified regarding the parties' assets, insurance coverage, and property and child custody agreements. He also expressed his belief that Mrs. Smith had engaged in extramarital affairs because she had looked for emotional support outside the family and that her "need to be involved with somebody" contributed to her anxiety problems. Mr. Smith's testimony did not contradict Mrs. Smith's testimony about the nature of her condition, however, nor did he offer any expert testimony contradicting Mrs. Smith's evidence about her illness and the extent of treatment she needed.
The parties agreed that Mrs. Smith's annual income at the time of the hearing was $10,920 and that Mr. Smith's "regular pay" was $58,600 per year. The parties also agreed that Mr. Smith had overtime earnings of $29,773 in 1996, $27,314 in 1995, and $12,937 in 1994. Mrs. Smith was forty-four years old at the time of the hearing, and Mr. Smith was forty-five.
Based on the evidence presented, the trial court did not abuse its discretion in ordering Mr. Smith to pay $475 per week in spousal support. The trial court properly considered the extent to which Mrs. Smith's emotional problems prevented her from supporting herself. The record supports the trial court's finding that, due to her emotional problems, Mrs. Smith's ability to maintain employment, especially full-time employment, was questionable. Moreover, Mrs. Smith lacked specialized skills and had been out of the workforce for many years.
Mr. Smith urges that Mrs. Smith's monthly expenses as presented to the trial court were unreasonable because they were based on expenses incurred in maintaining the marital residence, and the parties had agreed to sell the marital residence. Mrs. Smith, however, will undoubtedly incur other housing expenses. We also note that Mrs. Smith's monthly income, including the spousal support awarded and her income from employment, was still substantially less than her proffered expenses.
The first assignment of error is overruled.
 II. THE COURT ERRED IN NOT STATING A DATE WHEREIN THE ALIMONY ORDER WOULD TERMINATE.
Mr. Smith claims that the trial court erred in not setting a termination date for the payment of spousal support.
As Mr. Smith points out, the modern trend in the law favors terminating spousal support on a date certain. Kunkle v. Kunkle
(1990), 51 Ohio St.3d 64, 69. The supreme court has held that, given current social and economic conditions, awards of spousal support should be made terminable upon a date certain in the vast majority of cases wherein both parties have the potential to be self-supporting. Id. at 68, citing Koepke v. Koepke (1983),12 Ohio App.3d 80, 81. See, also, Gore v. Gore (1985), 27 Ohio App.3d 141,142; Conley v. Conley (June 5, 1989), Montgomery App. No. 11278, unreported.
 The reason for awarding sustenance alimony payable only to a date certain is that the payee's need requiring support ceases, when, under reasonable circumstances, the payee can become self-supporting. Conversely, if under reasonable circumstances the divorced spouse does not have the resources, ability or potential to become self-supporting, then an award of sustenance alimony for life would be proper.
Kunkle, supra, at 69. Thus, the case law makes clear that the presumption in favor of termination of spousal support on a date certain is conditioned upon the payee spouse's ability to become self-supporting.
As discussed supra, Mrs. Smith presented evidence in the trial court that her emotional problems and medical treatment impeded her from maintaining full-time employment. Her doctor testified that Mrs. Smith would continue to need treatment for several years and that the success of her treatment was somewhat dependent on the stress level she experienced in her life. As such, the trial court could not have estimated with any reasonable certainty a future date at which Mrs. Smith was likely to be self-supporting and at which it would have been appropriate to terminate her spousal support. Under these circumstances, the trial court acted reasonably in refusing to set a date certain for termination of spousal support, especially where it retained jurisdiction to modify its award of spousal support in the future.
The second assignment of error is overruled.
The judgment of the trial court will be affirmed.
BROGAN, J. and FAIN, J., concur.
Copies mailed to:
Karl E. Paulig
Joseph M. Juergens
Hon. Roger B. Wilson