GORE, APPELLANT, *v.* GORE, APPELLEE.

(No. 12078 — Decided October 23, 1985.)

*Robert B. Laybourne,* for appellant.
*John H. Campbell,* for appellee.

MAHONEY, J. William B. Gore appeals the sustenance alimony award provisions contained in the Summit County domestic relations court's judgment entry granting his divorce from appellee Marie Gore. We affirm.

William and Marie Gore were married in Akron, Ohio, on August 17, 1963. This marriage produced three sons, two of whom had reached the age of majority at the time of the divorce. William is an attorney who practices in Akron and specializes in the area of labor relations. He is a member of a legal partnership and earns a base salary of $60,000 per year plus bonuses depending upon the firm's yearly earnings. Marie has a bachelor's degree in journalism and public relations but did not develop a

career during the marriage in order to maintain the couple's home and raise their three children. Marie did work part-time at various jobs during the marriage and is presently a substitute teacher in the Revere school system, from which she earned approximately $1,200 in 1984. She is not, however, presently qualified to teach full time and would need at least three semesters of classes and student teaching to become a full-time teacher.

The couple accumulated a significant amount of real and personal property during the marriage, including a home in Bath, Ohio, a condominium in Florida, numerous investments and many household and personal articles. During the marriage the couple attained a fairly high standard of living. They were members of a local country club and made yearly trips to their Florida condominium.

On January 20, 1984, William filed a complaint for divorce alleging that he and Marie had lived separate and apart for more than a year and asking that a divorce be granted and that the couple's property be divided. Marie thereafter filed an answer and counterclaim for divorce asking that the divorce be granted and that sustenance alimony be awarded. The parties then entered into negotiations in an attempt to settle the property division and sustenance alimony issues. These negotiations were unsuccessful and the matter was set for a hearing on October 31, 1984. After this hearing the court granted both parties a divorce, divided the marital property and obligations between them, awarded Marie custody of their minor child and made an award of child support.[1] The court also ordered that William pay Marie $1,400 per month as sustenance alimony until further order of the court and maintain her as

---

[1] None of these issues is involved in this appeal.

beneficiary on a certain term life insurance policy as long as he had a responsibility to pay sustenance alimony.

## Assignment of Error I

"The trial court erred when it abused its discretion in awarding the defendant-appellee sustenance alimony in the sum of FOURTEEN HUNDRED NO/100 DOLLARS ($1400.00) per month."

The record in this case clearly establishes that this couple attained a relatively high standard of living during their marriage and that Marie has rather sizeable monthly expenses. In addition to Marie's current expenses, she will also have to pay for any courses she takes in pursuit of her teaching degree. Given the couple's standard of living, Marie's present and future expenses and the level of William's income, we find no abuse of discretion in awarding Marie $1,400 per month as sustenance alimony.

## Assignment of Error II

"The trial court erred when it abused its discretion and awarded the defendant-appellee sustenance alimony until further order of the court."

While the present trend is toward making sustenance alimony payments terminable upon a date certain, it is not improper for the court to make the payments terminable only on further order of the court where providing for termination on a date certain could pose a hardship to either of the parties. *Koepke* v. *Koepke* (1983), 12 Ohio App. 3d 80. Marie is clearly in need of sustenance alimony at the present time given her low income from substitute teaching and her inability to teach full time. There is simply no way to tell when Marie's need for sustenance alimony will end and choosing a date certain for termination would be pure guesswork. Such guesswork could easily result in terminating the payments at a point in

time at which Marie will still be very dependent upon them or by having them continue long after Marie had become self-sufficient.

William cites this court to the daily newspaper's help-wanted section to establish that there are plenty of jobs available to women in today's world. The problem, however, is that Marie is not qualified for many of these jobs and neither this court nor the trial court can reasonably expect a woman with Marie's abilities and potential to immediately accept a position that is not commensurate with her education and training. The lower court therefore acted within the scope of its discretion in making sustenance alimony payable until further order of the court.

### Assignment of Error III

"The trial court erred when it required plaintiff-appellant to maintain the defendant as beneficiary on his term insurance policy with the First Colonial Life Insurance Company and to pay premiums on said policy so long as he had a responsibility for the payment of sustenance alimony."

In raising this assignment of error, William claims that the court's requirement that he maintain Marie as beneficiary of his life insurance policy is improper because it could require that his estate pay Marie alimony after his death. We can find no Ohio precedent dealing with this issue. While a few states have ruled in accordance with William's contention, most states which have considered the issue have ruled that it is within a trial court's discretion to order upon divorce that one spouse maintain a life insurance policy for the other's benefit and have not found such an order to be in violation of the prohibition against ordering alimony payments beyond the payor's death. See Annotation (1974), 49 A.L.R. 3d 9, Sections 4(a) and (b), and supplement. After considering this question in the light of Ohio law,

we hold that the trial court acted properly in ordering that William pay the insurance premiums and maintain Marie as beneficiary as long as the alimony payments continue.

When William and Marie were still married, Marie's interest as beneficiary in the policy was a mere expectancy. See, generally, treatment of "expectancy," 15A Words & Phrases (1950) 402, and supplement. R.C. 3105.18(B)(4) expressly requires that the trial court consider the expectancies of the parties in determining the need for and proper form of alimony. In making its order, the trial court merely extended the expectancy Marie had during the marriage. The only "alimony" involved here are the premium payments William will pay during his life; any insurance proceeds Marie receives after William's death will not come from his estate, will not affect the estate, and in fact will not be alimony at all but rather a realization of Marie's expectation.

### Summary

Appellant's assignments of error are overruled. The judgment is affirmed.

*Judgment affirmed.*

BAIRD J., concurs.

GEORGE, P.J., concurs in part and dissents in part.

GEORGE, J., concurring in part and dissenting in part. While I concur in the disposition of Assignment of Error No. I, I must dissent as to the disposition of Assignments of Error Nos. II and III. The scope of these two claimed errors is captured in a single paragraph of the trial court's judgment, which reads:

"It is further ORDERED, ADJUDGED and DECREED that the plaintiff [William] pay to the defendant [Marie] as and for alimony the sum of

one thousand four hundred dollars ($1,400.00) per month, plus two percent (2%) poundage, *until further order of court,* said sum shall be paid through the Bureau of Support, Summit County, Ohio. In addition, *plaintiff shall maintain the defendant as beneficiary on his term life insurance policy with the First Colonial Life Insurance Co. and he shall pay the premium[s] thereon as they become due; this order pertaining to life insurance shall remain in effect for as long as plaintiff has a responsibility for payment of sustenance alimony."* (Emphasis added.)

The trend nationally, as the majority has noted, is to make sustenance alimony payments terminable upon a date certain. A fixed date offers finality between the parties and provides a definite time frame encouraging the dependent spouse's self-sufficiency. An award which fails to specify either a termination date or a reconsideration date is effectively one for life. It creates a disincentive for the dependent spouse and prolongs or even avoids independence.

The granting of interminable alimony should be employed only in those cases having unusual circumstances such as where the dependent spouse is physically or mentally disabled. See, for example, *Davis* v. *Davis* (1982), 184 N. J. Super. 430, 446 A. 2d 540 and similar cases collected in Annotation (1974), 59 A.L.R. 3d 9, 27, Section 5 and 1985 Supp., Section 5, at 4.

As to the second part of the order, dealing with the maintenance of a term life insurance policy without being authorized by statute, contractual agreement, or unusual circumstances which would call for such an extraordinary provision, I cannot agree that it is proper.

There is no question but that a trial court is granted wide discretion to fashion its divorce decree to meet the particular circumstances presented. However, the use of the maintenance of a term life insurance policy with Marie named as a beneficiary for so long as sustenance alimony is to be paid creates problems not easily resolvable. For example: what remedies are available to Marie if William fails to pay the premiums although he is current on alimony? Does the order of the court require William to secure a new policy upon expiration of the existing one? Does William have the right to change carriers or diminish the current value? Who has physical control over the policy? Was notice given to First Colonial Life Insurance Co. of the court's order? Upon William's death under Ohio law, will Marie be entitled to derive a direct benefit after William's death? Can Marie's activities affect the need to continue maintenance of the policy?

This type of insurance security should be available for the extraordinary case, but such use should only occur with the specific ramifications spelled out in the order. Here more rights are left indeterminate than are determined by the court's order.

Even when a court has been willing to recognize the maintenance of a life insurance policy to secure a child support order, such a requirement is tempered with the parental duty to support for the period of minority only. Thus, the unspecified time for the continuance of the payment of alimony and the maintenance of a term life insurance policy, under the facts of this case, are improper.